**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phoenix Payment Solutions, Inc.; Brian Bonfiglio; John Kirchhefer; and FAPP Holding, Inc., <br><br> Plaintiffs/Counterdefendants, <br><br> vs. <br><br> Carl Towner, <br><br> Defendant/Counterclaimant. | No. CV-08-651-PHX-DGC <br><br> **ORDER** |

Carl Towner founded First American Payment Processing, Inc. ("FAPP") in the mid-1990s. FAPP processes various types of electronic payments between merchants and consumers and generates revenue by charging transaction fees. FAPP holds merchant funds received from consumers in a separate account and periodically remits payments to merchants pursuant to certain service agreements.

Brian Bonfiglio and John Kirchhefer are former employees of FAPP. They formed Phoenix Payment Solutions, Inc. ("PPS") in order to purchase FAPP from Towner. Pursuant to a stock purchase agreement dated November 18, 2004 ("Agreement"), PPS bought FAPP for a purchase price of $7 million.

Plaintiffs have filed this action against Towner, alleging that he wrongfully caused FAPP to fall into debt and then concealed this fact during the negotiations for sale of the company. Dkt. #1-1. The amended complaint asserts seven claims: common law fraud and fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, wrongful

distribution in violation of A.R.S. § 10-640, fraudulent transfer, fraud in the execution, and constructive trust and accounting. Dkt. #1-2. Towner asserts several counterclaims primarily relating to the parties' performance (or lack thereof) under a software addendum to the Agreement. Dkt. #15.

The parties have filed motions for summary judgment. Dkt. ##47, 51. The motions have been fully briefed. Dkt. ##57, 59, 61, 62. For reasons that follow, the Court will grant the motions in part and deny them in part.[1]

## I. Summary Judgment Standard.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Plaintiffs' Claims.

Plaintiffs' claim for fraudulent transfer (count five) has been dismissed. Dkt. #10. Towner seeks summary judgment on the other six claims. Towner argues, among other things, that (1) certain claims are time barred, (2) Plaintiffs cannot show any fraudulent misrepresentations, (3) Plaintiffs cannot establish justifiable reliance in support of the negligent misrepresentation claim, and the claim fails to the extent it is based on Towner's alleged promises of future conduct, (4) the breach of fiduciary claim fails because FAPP

---

[1]Plaintiffs' request for oral argument is denied because the parties have thoroughly briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

suffered no injury, (5) the claim for fraud in the execution fails because Plaintiffs cannot establish mutual mistake and were aware of the contents of the Agreement when they signed it, (6) the claim for wrongful distribution under A.R.S. § 10-640 fails because Towner's withdrawal of $2 million from FAPP was not a distribution and FAPP was solvent when the withdrawal was made, and (7) Plaintiffs' claims are barred by the *Bangor Punta* doctrine. Dkt. #47. Plaintiffs argue that they are entitled to summary judgment on the claims for breach of fiduciary duty and violation of A.R.S. § 10-640, and that partial summary judgment is appropriate with respect to the falsity of certain representations made by Towner. Dkt. #51 at 2-13. The Court will address each argument.

### A. Statute of Limitations.

The initial structure of the sale, according to Plaintiffs, was that PPS would borrow $5 million of merchant funds from FAPP to pay Towner for his interest in the company and the loan would be repaid with future earnings. Dkt. #52 ¶¶ 28, 32. A report generated from FAPP's QuickBooks accounting software showed $2 million less than that reflected in a report generated from FAPP's payment processing software. *Id.* ¶ 29. Towner purportedly stated that this difference represented $2 million in equity that he intended to keep and the $5 million purchase price therefore needed to be raised to $7 million. *Id.* ¶¶ 30, 38. Plaintiffs claim that the $2 million difference was not equity, but instead was money Towner had taken from merchant funds by writing himself a check in May 2004. *Id.* ¶¶ 39-41. Towner asserts that the $2 million constituted a company reserve properly booked on FAPP balance sheets as an asset entitled "Reserve CET." Dkt. #58 ¶ 30.

Towner argues that any claims relating to the Reserve CET and statements that FAPP had $2 million in equity are time barred. Dkt. #47 at 3-4. Arizona law establishes a three-year statute of limitations for fraud (A.R.S. § 12-543(3)) and a two-year period for negligent misrepresentation and breach of fiduciary duty (A.R.S. § 12-542(1)). Under Arizona's "discovery rule," a cause of action accrues when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995).

The parties agree on the length of the relevant limitation periods, but disagree on when the claims accrued. Towner contends that Plaintiffs knew of the possibility of fraud and resulting injury as early as December 2004, more than three years before filing suit on January 31, 2008. Dkt. #47 at 3-4. Plaintiffs contend that they did not discover that Towner had misrepresented the $2 million in "equity" until June 2006, less than two years before the suit. Dkt. #59 at 3-4.

It is well settled that "determinations of the time when discovery occurs and a cause of action accrues 'are usually and necessarily questions of fact for the jury.'" *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (citations omitted). In this case, Plaintiffs have presented evidence showing that although they were aware of the $2 million accounting discrepancy at the time of sale, they believed Towner when he said the $2 million represented equity in FAPP and they did not discover that it actually constituted merchant funds until June 2006 when Bonfiglio examined FAPP's books in response to a tax question posed by Towner. Dkt. #60-2 at 71-78. Towner contends that Plaintiffs were on notice to investigate the $2 million discrepancy in December 2004. Towner relies on an e-mail dated December 10, 2004, in which Bonfiglio stated that he "was pretty freaked out" after meeting with FAPP's counsel, but that he would feel good about everything going forward if they "do the [$2 million] and just seek out advice to verify everything is kosher within the next month or two." Dkt. #50-3 at 8. Towner also relies on a December 20, 2004 letter he received from FAPP's counsel noting "serious legal issues" arising out of the structure of the Agreement and the money paid to Towner for his interest in FAPP. Dkt. #50-3 at 10-11.

Construing the evidence in Plaintiffs' favor, as the Court must on Towner's summary judgment motion, the Court concludes that there are triable issues as to when Plaintiffs' claims accrued. Bonfiglio has testified that the $2 million referenced in his e-mail had nothing to do with the Reserve CET or the purported $2 million in equity. Dkt. #50-2 at 26. While the letter from counsel references "serious legal issues" (Dkt. #50-3 at 10), it is not clear from the record what those issues were or whether they were communicated to Plaintiffs. Whether Plaintiffs should have suspected Towner's misconduct earlier than June

2006 "is the very sort of factual determination that must be left for the jury[.]" *Walk*, 44 P.3d at 996; *see Gust, Rosenfeld*, 898 P.2d at 969 (trial court correctly allowed jury to decide when cause of action accrued). The Court will deny summary judgment on Towner's statute of limitations defense.

**B.     Misrepresentations.**

        **1.     Plaintiffs' request for partial summary judgment.**

To establish their claims for fraud (counts one and six) and negligent misrepresentation (count two), Plaintiffs intend to show that Towner made certain misrepresentations. Dkt. #51 at 9. Plaintiffs seek summary adjudication of the fact that Towner's statement that FAPP had $2 million in equity is false. *Id.* at 9-10. Courts have "open-ended discretion to decide whether it is practicable to determine what facts are not genuinely at issue." Fed. R. Civ. P. 56, Advisory Comm. Notes (2007 Ams.). Courts in this Circuit "'have found independent requests for partial summary adjudication to be appropriate where the fact or issue to be adjudicated is potentially case dispositive.'" *Harris Tech. Sales, Inc. v. Eagle Test Sys., Inc.*, No. 06-02471-PHX-RCB, 2008 WL 343260, at *9 (D. Ariz. Feb. 5, 2008) (citation omitted).

Plaintiffs' fraud and negligent misrepresentation claims involve multiple elements. *See Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000) (fraud and negligent misrepresentation); Restatement (Second) of Contracts §§ 163-64 (1981) (fraudulent inducement and fraud in the execution). Because falsity is but one of those elements (*see id.*), summary adjudication of the issue of falsity would not be dispositive of any claim in the case. Moreover, Towner disputes having ever told Plaintiffs that FAPP had $2 million in equity. Dkt. #58 ¶¶ 30, 38; Dkt. #58-4 at 50, ¶ 10. Because that dispute and others must be resolved by the trier of fact, the Court concludes that it is not practicable nor an efficient use of judicial resources to determine the single issue of falsity on summary judgment. The Court will deny Plaintiffs' request for partial summary judgment. *See In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2007 WL 625533, at *7 (N.D. Ill. Feb. 23, 2007) (declining to enter order determining facts where doing so "would not further the litigation and . . . would

waste judicial resources"); *In re Bridgestone/Firestone, Inc.*, No. IP 00-9373-C-B/S, 2002 WL 1011781, at *1 (S.D. Ind. May 13, 2002) (declining request for summary adjudication and noting that "the court's discretion to determine *issues* – as opposed to *claims* – is most prudently exercised when . . . a decision on the issue presented could significantly pare down the presentation of proof at trial or materially advance the settlement of the case") (emphasis in original).

Plaintiffs contend that Towner's declaration testimony is a "sham" and cannot be used to contradict paragraphs 39 and 41 of his statement of facts in which he admits having told Plaintiffs that FAPP had $2 million in equity. Dkt. #62 at 7-8. Towner has made clear, however, that the facts asserted in his statement of facts are assumed true solely for the purpose of his own summary judgment motion. Dkt. #48 at 1. Moreover, Towner's declaration is not a sham because paragraphs 39 and 41 are based not on Towner's own testimony, but on allegations of the complaint and testimony from Plaintiffs (Dkt. #48 at 6). *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (a declaration may be determined a sham only where it flatly contradicts earlier testimony from the declarant).

### 2. Towner's arguments.

Plaintiffs' fraud and negligent misrepresentation claims are based in part on several alleged misrepresentations: (1) that the $2 million accounting discrepancy constituted FAPP equity (rather than merchant funds), (2) that Towner would return money to FAPP and "would always be there" for the company if it had financial shortfalls or was not successful, (3) that FAPP was financially strong, (4) that the Agreement was prepared by counsel and reviewed by an accountant, and (5) that the addendum to the Agreement (stating that Plaintiffs had not relied on information provided by Towner) was a mere formality. *See* Dkt. #15 ¶¶ 16, 26, 33; Dkt. #47-2 at 23-25.[2] Towner seeks summary judgment on the first three statements (Dkt. #47 at 7-8, 14) and makes several arguments in support (*id.* at 7-15).

First, Towner argues that the fraud claims relating to the Reserve CET are

---

[2] In connection with these statements, Towner allegedly failed to record the $2 million in FAPP's books and concealed his personal use of merchant funds. Dkt. #47 at 7-8.

built entirely upon a "tenuous series of inferences" derived from his alleged use of the word "equity." *Id.* at 8-9. It is undisputed that Towner caused FAPP to write him a check for $2 million, that he deposited the check into his personal bank account, and that merchant funds – rather than company earnings or profits – were used to cover the check. Dkt. #48 ¶¶ 6, 8, 10; Dkt. #52 ¶¶ 41, 42, 46. A jury reasonably could infer from these facts that Towner intentionally misrepresented to Plaintiffs that FAPP had $2 million in "equity" at the time of sale. "[W]here divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

Towner contends that intent to defraud may not be inferred given that the $2 million was withdrawn from FAPP six months before its sale. *Id.* at 9. But Plaintiffs' fraud claims are based not on the withdrawal itself, but on Towner's alleged statement during negotiations that the money constituted equity. *See* Dkt. #59 at 11. Moreover, the issue of intent is a "'factual issue[] inappropriate for resolution by summary judgment.'" *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) (citation omitted). The Court will deny summary judgement with respect to the fraud claims relating to the Reserve CET.

Second, Towner argues that the fraud and negligent misrepresentation claims relating to the fact that merchant funds were used to pay a $1.5 million settlement with the Federal Trade Commission ("FTC") fail as a matter of law because he made no affirmative representation about that settlement. Dkt. #47 at 8, 14. Plaintiffs correctly note that failure to disclose material information may constitute actionable fraud (Dkt. #59 at 13). *See Madisons Chevrolet, Inc. v. Donald*, 505 P.2d 1039, 1042 (Ariz. 1973); *Formento v. Encanto Bus. Park*, 744 P.2d 22, 28 (Ariz. Ct. App. 1987) ("The distinction between fraudulent, affirmative misrepresentation and fraudulent concealment is often a distinction without a difference."). Similarly, "[n]egligent misrepresentation may be by omission or nondisclosure of material facts as well as by overt misrepresentation." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1387 n.3 (Ariz. Ct. App. 1994). The Court will deny summary judgement with respect

to this issue.[3]

Third, Towner asserts that FAPP's purchase price was based not on the amount of any equity in FAPP, but upon its potential future earnings. Towner further asserts that FAPP's earnings have been sufficient to allow Plaintiffs to both repay the $5 million they borrowed and make substantial profits. Towner argues that even if the $2 million he withdrew from FAPP constituted merchant funds (rather than equity), and even if he used those funds for his own personal benefit, the fraud claims still fail because Plaintiffs ultimately received exactly what Towner promised – a profitable company. Dkt. #47 at 9-12.

This argument is misplaced. Plaintiffs do not contend that FAPP was not worth the $5 million they borrowed from the company to pay Towner. Plaintiffs claim that because Towner failed to tell them that merchant funds had been used to pay Towner $2 million and to pay the $1.5 million FTC settlement, Plaintiffs were forced to pay $3.5 million in merchant liabilities that they did not know existed when they bought the company. *See* Dkt. #59 at 12-13; Dkt. #60 at 22, ¶ 1. Put another way, but for Towner's alleged fraud, the $3.5 million Plaintiffs used to reimburse merchants would have been retained as company earnings. There are genuine issues of fact as to whether Towner fraudulently caused Plaintiffs damages. The Court will deny summary judgement with respect to this issue.

Towner asserts in his reply that Plaintiffs "have failed to meet their burden of producing evidence that they paid anything to FAPP's merchants to satisfy the alleged $3.5 million liability." Dkt. #61 at 4. Towner construes Bonfiglio's testimony on this issue (Dkt. #60-2 at 26-27) as a mere "unsubstantiated assertion." Dkt. #61 at 4. Towner did not make this argument in his motion. *See Celotex*, 477 U.S. at 323 (discussing the moving party's summary judgment burden). Moreover, the weight to be given to Bonfiglio's testimony is for the jury to decide. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are

---

[3]The Court will not consider Towner's arguments, made for the first time in his reply, that he had no duty to disclose the FTC payment and the payment was not material (Dkt. #61 at 9-10). *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

- 8 -

jury functions, not those of a judge.").

Fourth, Towner argues that his alleged statements that he would return money to FAPP and would always be there for the company are promises of future conduct that cannot form the basis of a negligent misrepresentation claim. Dkt. #47 at 14-15. Towner is correct that under Arizona law "[a] promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992). Plaintiffs provide no response to Towner's claim regarding Arizona law on this issue, nor do Plaintiffs contend that the alleged statements are actionable statements of fact.[4] Because Towner's alleged statements are non-actionable promises of future conduct, the Court will grant summary judgment in Towner's favor to the extent Plaintiffs rely on those statements in support of their negligent misrepresentation claim (count two).

Fifth, Towner argues that no investor reasonably would have relied on the statement that FAPP was financially "strong" and the statement therefore constitutes non-actionable puffery. Dkt. #47 at 10. "Puffing generally is defined as exaggerated, vague, or loosely optimistic statements about a company that are deemed so immaterial and unworthy of reliance that they cannot serve as the basis for liability[.]" *Zack v. Allied Waste Indus., Inc.*, No. CIV04-1640PHXMHM, 2005 WL 3501414, at *9 (D. Ariz. Dec. 15. 2005). "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).

The statement that FAPP was financially "strong" is not an objectively quantifiable statement, but a vague and optimistic assertion regarding the company's overall financial condition. "That kind of general assertion is classic puffery." *Newcal*, 513 F.3d at 1053. Because the alleged statement is "so vague that a reasonable investor could not have expected to rely on it," *Zack*, 2005 WL 3501414, at *9, the Court will grant Towner's

---

[4] Plaintiffs erroneously assert that Towner has not sought summary judgment with respect to the alleged statements. Dkt. #59 at 9 at n.4.

summary judgment motion with respect to this issue. *See In re Cable & Wireless, PLC*, 332 F. Supp. 2d 896, 901 & n.6 (E.D. Va. 2004) (statement that company had "strong finances" is mere puffery); *see also N. Valley Partners, LLC v. Jenkins*, No. 101957/08, 2009 WL 1058126, at *7 (N.Y. Sup. Ct. Apr. 14, 2009) (company and management were "strong"); *In re Lab. Corp of Am. Holdings*, No. 1:03CV591, 2006 WL 1367428, at *10 (M.D.N.C. May 18, 2006) (company's competitive position had "never been stronger"); *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 739 (N.D. Ohio 2006) (company was in "good financial shape"); *YTD Indus. v. Dow Chem. Co.*, No. CV-05-08881-SGL (AJWx), 2008 WL 4184649, at *12-16 & n.5 (C.D. Cal. Aug. 29, 2008) (company was "doing well" and was "highly successful").

Finally, Towner argues that any reliance on his alleged statements regarding the Reserve CET was not reasonably justified because Plaintiffs failed to investigate the $2 million discrepancy between QuickBooks and the payment processing software prior to executing the Agreement. Dkt. #47 at 12-13, 15. Plaintiffs have presented evidence that when they came to work on November 19, 2004, they had no idea they would be entering into an agreement to purchase FAPP (Dkt. #52 ¶ 26), that they trusted Towner as a long-time friend and mentor (Dkt. #60 at 8, ¶ 24), that Towner told them the Agreement had been prepared by counsel and reviewed by an accountant (*id.* at 22, ¶ 2), and that Plaintiffs did not have access to FAPP's QuickBooks and did not know how to use that software prior to purchasing FAPP (*id.* at 25, ¶ 20). A jury reasonably could conclude from this evidence that Plaintiffs were justified in relying on Towner's alleged misrepresentations regarding the Reserve CET. *See Miller v. Mason-McDuffie Co. of S. Cal.*, 739 P.2d 806, 811-12 (Ariz. 1987) (en banc) (whether the plaintiff reasonably relied on a bank manager's apparent authority was a jury question even where the loan document contained "red flags" that should have alerted the plaintiff to a potential forgery); *Union Bank v. Safanie*, 427 P.2d 146, 151 (Ariz. Ct. App. 1967) (noting that "the general trend of the law in fraud cases is away from holding that a plaintiff, who fails to make his own investigation, may not recover"). The Court will deny summary judgment with respect to this issue. *See Rowe v. Bankers Life &*

*Cas. Co.*, No. CV-07-1281-PHX-MHM, 2008 WL 5156077, at *8 (D. Ariz. Dec. 9, 2008) (denying summary judgment on fraud and negligent misrepresentation claims where there was a triable issue of reliance).

### C. Breach of Fiduciary Duty.

Plaintiffs assert in count three that Towner breached his fiduciary duties to FAPP by, among other things, (1) falsely accounting for the FTC settlement payment in a way that overstated FAPP's value, and (2) withdrawing $2 million in merchant funds and falsifying the records of that distribution. Dkt. #1-2 ¶ 58. Plaintiffs further claim that Towner breached his duty of loyalty by taking a complete copy of FAPP's payment processing software when he left. Dkt. #52 ¶ 50.

Towner argues that because he owed fiduciary duties to FAPP, not Plaintiffs, and because FAPP itself suffered no harm from the alleged overstatement of its value, summary judgment is proper with respect to this aspect of the breach of fiduciary duty claim. Dkt. #47 at 15-16; *see Brazlin v. W. Sav. & Loan Ass'n*, No. 91-0078-PHX-SMM, 1994 WL 374286, at *7 (D. Ariz. Jan. 28, 1994) (breach of fiduciary duty claim belongs to the corporation). Plaintiffs make clear in their response that they are not relying on a "theory of overvalution." Dkt. #59 at 18. The Court will therefore grant Towner's summary judgment motion with respect to this issue.

Towner further argues that he is entitled to summary judgment on the claim that he breached his fiduciary duties to FAPP by withdrawing $2 million in merchant funds because that withdrawal was properly reflected on FAPP's books as a company reserve. Dkt. #47 at 16. Plaintiffs contend that they are entitled to summary judgment on count three because Towner clearly breached his fiduciary duties to FAPP by withdrawing $2 million in merchant funds in an attempt to hide money from the FTC, by selling FAPP for $7 million rather than the negotiated $5 million purchase price, and by taking a copy of FAPP's payment processing software when he left the company. Dkt. #51 at 7-9. The parties vigorously dispute whether the "business judgment rule" applies to Towner's alleged conduct and, if so, whether there is sufficient evidence to overcome the presumption of good faith afforded by

that rule. Dkt. ##51 at 8-9, 57 at 6-7, 62 at 5-7; *see* A.R.S. § 10-830(D); *Shoen v. Shoen*, 804 P.2d 787, 794 (Ariz. Ct. App. 1990) (discussing the business judgment rule).

Having considered the parties' arguments, and having reviewed the evidence presented in support thereof, the Court concludes that whether Towner's conduct constitutes a breach of fiduciary duty "is a question of fact to be decided by the trier of fact 'based on a consideration of all the circumstances of the case.'" *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 989 (Ariz. Ct. App. 2009); *see FDIC v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998) (reversing summary judgment under the business judgment rule because the "determination whether a corporate director has properly discharged his duties is a question of fact"); *see also Kadish v. Phx.-Scotts. Sports Co.*, 466 P.2d 794, 797 (Ariz. Ct. App. 1970) ("Whether a corporate expenditure is for a corporate purpose is normally a question of fact."); *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 549 (D. Del. 2005) (whether a corporate officer breached his duty of loyalty "is a fact-dominated question, the answer to which will necessarily vary from case to case") (citation omitted). The Court will deny summary judgment with respect to all aspects of the breach of fiduciary duty claim (count three) except Plaintiffs' assertion that Towner overstated FAPP's value.

### D. A.R.S. § 10-640.

Plaintiffs allege in count four that Towner's withdrawal of $2 million from FAPP in May 2004 constitutes a wrongful distribution in violation of A.R.S. § 10-640. Dkt. #1-2 ¶¶ 62-64. Section 10-640(C) prohibits a board of directors from making certain distributions to shareholders. Specifically, a distribution shall not be made if, after it is given effect, (1) the corporation would not be able to pay its debts as they become due in the usual course of business (the "equity insolvency test"), or (2) the corporation's total assets would be less than the sum of its total liabilities (the "balance sheet test"). A.R.S. § 10-640(C)(1)-(2); *see Paratransit Risk Retention Group Ins. Co. v. Kamins*, 160 P.3d 307, 315 (Colo. Ct. App. 2007) (discussing similar Colorado statute). Plaintiffs assert violations of section 10-640 under both the equity solvency test and the balance sheet test, alleging that after the $2 million was distributed to Towner, "FAPP could no longer pay its debts as they came due,

1  and the sum of FAPP's total liabilities was greater than its total assets." Dkt. #1-2 ¶ 63.

2  Towner cites *Kamins* for the proposition that the balance sheet test is not applicable
3  where the corporation is owned by a sole shareholder. Dkt. #47 at 6. Towner is correct that
4  the balance sheet test was not at issue in *Kamins* (*see* 160 P.3d at 315), but nowhere in its
5  decision did the *Kamins* court state that this was because the defendant was the corporation's
6  sole shareholder. Towner cites no other case law, from Arizona or elsewhere, in support of
7  his proposition. The Court will deny summary judgment to the extent Towner contends that
8  the balance sheet test does not apply to count four.

9  Towner violated section 10-640, Plaintiffs contend, because the $2 million he took
10 from FAPP constitutes a "distribution" and FAPP was rendered insolvent given that it had
11 no offsetting account receivable on its books. Dkt. #51 at 10-13. Towner claims that
12 Plaintiffs have not shown that FAPP was insolvent; that is, that the company was not able
13 to pay its debts as they came due. Dkt. #47 at 6-7. The Court need not decide this issue
14 because there are genuine issues of fact as to whether the $2 million transaction constitutes
15 a "distribution" for purposes of section 10-640.

16 Towner has testified that the $2 million was not a stockholder distribution, but instead
17 was a transfer to a "reserve account" to ensure that FAPP had funds available to operate if
18 its bank accounts were frozen as a result of the FTC litigation. Dkt. #50-2 at 40, 42; *see*
19 Dkt. #58 ¶¶ 7-12. Towner's expert witnesses have testified that the $2 million was treated
20 as an account receivable owed by Towner to FAPP and therefore remained a FAPP asset.
21 Dkt. #52-3 at 33-34, 38-39. Plaintiffs' own expert has testified that the transaction "was not
22 treated as a distribution" by Towner. Dkt. #50-1 at 29. Plaintiffs assert that any labels
23 affixed to the transaction are not dispositive because multiple factors must be considered in
24 determining whether a purported "loan" to a shareholder is actually a distribution. Dkt. #51
25 at 10-11 (citing *Alterman Foods, Inc. v. United States*, 505 F.2d 873, 877 (5th Cir. 1974)).
26 Plaintiffs further assert that each of these factors establish that the $2 million transaction was
27 a distribution. *Id.* at 11. Towner counters that the transaction has never been characterized
28 as a "loan" and that a factual dispute exists as to whether the transaction was a distribution.

1 | Dkt. #57 at 11.

2 | The Court cannot, on the present record, conclude as a matter of law that the $2 million transaction was a distribution for purposes of section 10-640. Nor is it entirely clear from the record that Towner would be liable for the alleged distribution under A.R.S. § 10-833. Section 10-833(A) makes a director "personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating §10-640 . . . if it is established that the director's duties were not performed in compliance with §10-830," which in turn requires a director to act in "good faith." *See* A.R.S. §10-830(A)(1). Plaintiffs assert that Towner "violated the standard of conduct for directors contained in A.R.S. § 10-830" (Dkt. #51 at 13), but provide no argument or legal authority in support of this assertion. The Court will deny summary judgment on the claimed violation of A.R.S. § 10-640 (count four).

### E. Fraud in the Execution.

Plaintiffs assert in count six of the complaint a claim for fraud in the execution. Plaintiffs allege that "[d]ue to fraud by Defendant or mutual mistake by the parties, the purchase price was stated in the Agreement as $7,000,000 instead of the agreed $5,000,000." Dkt. #1-2 ¶ 75.

Towner argues that the "conscious ignorance" doctrine precludes Plaintiffs from establishing mutual mistake by the parties. Dkt. #47 at 12-13. Plaintiffs agree that, contrary what is alleged in the complaint (Dkt. #1-2 ¶ 75), count six is not based on mutual mistake. Dkt. #59 at 15.

Towner further argues that the claim fails to the extent it is based on a theory of fraud because Plaintiffs were aware of the stated $7 million purchase price when they executed the Agreement. Dkt. ##47 at 13-14, 61 at 10. The Court agrees.

There is a significant difference between misrepresentations giving rise to a claim for "fraud in the inducement" and those supporting a "fraud in the execution" claim. "The former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is." *Sw.*

- 14 -

*Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986); *see generally* Restatement (Second) of Contracts §§ 163-64 (1981). Fraud in the execution occurs when a person "signs a document reasonably believing it is something quite different than it is[.]" *Operating Eng'rs Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984); *see Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 32 (2d Cir. 1997) ("Proof that a party secretly substituted one type of document for another is evidence of fraud in the execution."); *Iron Workers' Local No. 25 Pension Fund v. Nyeholt Steel, Inc.*, 976 F. Supp. 683, 689 (E.D. Mich. 1997) (fraud in the execution involves a person believing "he is not assenting to any contract or that he is assenting to a contract entirely different from the proposed contract"); *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, No. 07-5122 (HAA), 2009 WL 349147, at *7 (D.N.J. Feb. 11, 2009) (contracting party "duped by a bait-and-switch" is a victim of fraud in the execution); *Pedersen v. Bibioff*, 828 P.2d 1113, 1119 (Wash. Ct. App. 1992) (fraud in the execution is "fraud that goes to the nature of the instrument itself").

Plaintiffs do not dispute that they knew the contract's purchase price had been changed from the $5 million to $7 million. Dkt. ##1-2 ¶ 26, 52 ¶ 31, 60 ¶ 42. Nor do Plaintiffs assert that they were duped into believing they were signing something other than an agreement to purchase FAPP. Towner's alleged misrepresentation that the additional $2 million constituted equity in FAPP may support a claim for fraudulent inducement (count one), but it cannot form the basis for fraud in the execution (count six). *See McCaddin v. Se. Marine Inc.*, 567 F. Supp. 2d 373, 380 (E.D.N.Y. 2008) ("'Fraud in the 'inducement' indicates a misrepresentation that goes to the subject matter underlying the transaction, but does not challenge the fact that an agreement of some kind was reached'") (citation omitted). The Court will grant Towner's summary judgment motion with respect to count six.

**H. Constructive Trust and Accounting.**

Towner seeks summary judgment on the derivative constructive trust and accounting claim on the ground that Plaintiffs have failed to establish an underlying claim. Dkt. #47 at 15. Because summary judgment will be denied with respect to most of Plaintiffs' claims, the

1 Court will deny Towner's request for summary judgment on the constructive trust and accounting claim (count seven).

### G. The *Bangor Punta* Doctrine.

Towner contends that Plaintiffs' claims are barred by the *Bangor Punta* doctrine. Dkt. #47 at 16-17. That doctrine provides that "a shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions." *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703, 710 (1974). As Towner himself recognizes (Dkt. #47 at 17), the doctrine applies only where there is no allegation that "the purchase transaction was tainted by fraud or deceit." *Bangor Punta*, 417 U.S. at 711. This is so because a fraud perpetrated in the purchase transaction itself "would indicate that the purchaser did not receive[] all that he or she had bargained for" when obtaining the corporation. *UCAR Int'l Inc. v. Union Carbide Corp.*, No. 00CV1338(GBD), 2004 WL 137073, at *7 (S.D.N.Y. Jan. 26, 2004). Given that Plaintiffs' fraudulent inducement claim has survived summary judgment, the *Bangor Punta* doctrine does not apply. The Court will deny Towner's summary judgment motion with respect to this issue.

## III. Towner's Counterclaims.

Towner's counterclaims primarily relate to a software addendum the parties executed on November 19, 2004. Pursuant to the addendum (1) Towner was entitled to retain a complete copy of FAPP's payment processing software and environments and (2) in exchange for consulting services, Plaintiffs were required to pay Towner ten cents per transaction for a period of three years. The addendum provides, in its entirety:

> Seller agrees purchaser is the sole owner of all payment processing software and environments to use as the sellers [sic] discretion. Seller will retain a copy of all software and processing environments to use at the sellers discretion. Purchaser agrees to pay a fee of ten cents ($0.10) per transaction to sellers Company for a period of thirty six (36) months for transaction and consulting fees. A transaction is defined as any transaction successfully accepted by the web application software.

Dkt. #52-2 at 147.

Towner alleges that Plaintiffs have refused to provide him with a complete copy of

the payment processing software and environments and stopped paying him consulting and transaction fees in November 2006. Dkt. #15 ¶¶ 29-33. Towner asserts six counterclaims: breach of contract for failure to pay fees, breach of contract for failure to deliver software, an alternative breach of contract claim relating to FAPP's purchase price, breach of the implied covenant of good faith and fair dealing, indemnification, and constructive trust and accounting. *Id.* ¶¶ 35-75. Plaintiffs seek summary judgment on all claims except the alternative breach contract claim (count three). Plaintiffs also seek summary judgment on Towner's request for an award of punitive damages. Dkt. #51 at 2, 13-17.

### A. Breach of Contract – Failure to Pay Fees (Count One).

Plaintiffs contend that count one fails because Towner did not provide consulting services and Plaintiffs therefore were not obligated to continue paying fees to Towner. Dkt. #51 at 13. Genuine issues of fact preclude summary judgment on count one.

Bonfiglio has testified that on numerous occasions in 2005 and 2006, "Towner refused to provide consultations and consulting services to FAPP." Dkt. #52-2 at 133, ¶ 3. Bonfiglio notes one instance in November 2006 where Towner refused to assist in negotiating a dispute with one of FAPP's largest merchants, Media Pay, until Plaintiffs agreed to pay him more money if the negotiations proved successful. *Id.* ¶ 2. Towner has testified that he simply demanded that Plaintiffs continue to pay him regular consulting and transaction fees as a condition of contacting Media Pay. Dkt. #58-4 at 51, ¶ 16. Towner has further testified that, after the sale of FAPP, he assisted Plaintiffs with questions related to FAPP's accounting and taxes, helped with banking negotiations and merchant reserve management, and suggested new sales techniques and pricing. Towner states that he "never refused to provide consulting services to Plaintiffs." *Id.* Given this conflicting testimony, the jury must decide whether Towner refused to provide consulting services and, if so, whether he did so before or after Plaintiffs stopped paying him fees. The Court will deny Plaintiffs' summary judgment motion with respect to count one.

### B. Breach of Contract – Failure to Provide Software (Count Two).

Plaintiffs contend that count two fails because Towner received a complete copy of

1 the FAPP payment processing software and environments and Plaintiffs therefore did not
2 breach the software addendum. Dkt. #51 at 14-15. Towner has presented evidence that the
3 software Plaintiffs provided to him did not work and was incomplete because it did not
4 include all source code. Dkt. #58 ¶¶ at 22, ¶ 72; at 29, ¶¶ 37-38; Dkt. #58-4 at 51, ¶ 20;
5 Dkt. #58-5 at 12, 15-17, 24. Towner also has testified that he "never received the
6 environments" (i.e., hardware) from Plaintiffs. Dkt. #58-4 at 51, ¶ 19; Dkt. #58-7 at 54. This
7 evidence is sufficient to create a triable issue as to whether Plaintiffs breached the software
8 addendum.

Plaintiffs further contend that count two fails because Towner has no evidence that he was damaged. Dkt. #51 at 15. In a July 2006 e-mail to Bonfiglio and Kirchhefer, Towner specifically complained that the delays in getting all source code for the processing software were costing him "large sums of money." Dkt. #58-5 at 12. Towner also has testified that he invested more than $1 million in a payment processing company, FastLane, Inc., that failed due to Plaintiffs' refusal to provide the FAPP processing software and environments required by the software addendum. Dkt. #58-4 at 51-52, ¶ 21; Dkt. #58-7 at 59. This evidence is sufficient to survive summary judgment on the issue of damages. *See Sarwick Motor Sales, Inc. v. Husband*, 426 P.2d 404, 407-08 (Ariz. Ct. App. 1967) (plaintiff's testimony regarding the value of his property sufficient to support verdict for actual damages); *Jackson v. Pressnell*, 506 P.2d 261, 262 (Ariz. Ct. App. 1973) (same); *see also Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1033 (9th Cir. 2009) (plaintiff's testimony regarding harm resulting from negative credit reports was "sufficient evidence of causation and damages to survive summary judgment"); *Crowe v. BellSouth Telecomms., Inc.*, No. 3:08cv179-WC, 2009 WL 1850189, at *4 (M.D. Ala. June 26, 2009) (same).

Plaintiffs assert that Towner's testimony regarding damages is insufficient because it is not corroborated by other evidence. Dkt. #62 at 10. "This attack goes not to the admissibility but to the weight of the testimony." *Sarwick*, 426 P.2d at 408. The weighing of evidence is a jury function. *See Anderson*, 477 U.S. at 255.

Plaintiffs reliance on *Rancho Pescado v. Northwestern Mutual Life Insurance Co.*,

680 P.2d 1235 (Ariz. Ct. App. 1984), is misplaced. *See* Dkt. ##51 at 15, 62 at 14. Towner's purported damages are not speculative lost future profits of FastLane, but the more than $1 million "capital investment" he made in the company. Dkt. #58-7 at 59.

Towner has presented evidence from which a jury reasonably could conclude that Plaintiffs breached the software addendum thereby causing Towner damages. The Court will deny Plaintiffs' summary judgment motion with respect to count two.

### C. **Breach of Implied Covenant of Good Faith & Fair Dealing (Count Four).**

Plaintiffs seek summary judgment on count four on the ground that the underlying breach of contract claims fail as a matter of law. Dkt. #51 at 15. Because issues of fact preclude summary judgment on the breach of contract claims, the Court will deny Plaintiffs' motion with respect to the claim for breach of the covenant of good faith and fair dealing.

### D. **Indemnification (Count Five).**

Towner alleges in count five that he is entitled to indemnification pursuant to FAPP's articles of incorporation and A.R.S. § 10-852. Dkt. #15 at 17-18. Plaintiffs contend that FAPP has no obligation to indemnify Towner because he breached fiduciary duties owed to the company and violated A.R.S. § 10-640. Dkt. ##51 at 15-16, 62 at 12. As explained more fully above (*see* sections II(C), (E)), there are triable issues with respect to Plaintiffs' claims for breach of fiduciary duty and violation of section 10-640. Summary judgment on Towner's indemnification claim will therefore be denied.

### E. **Constructive Trust and Accounting (Count Six).**

Plaintiffs assert that no basis exists for a constructive trust or an accounting because Towner's breach of contract claim for unpaid fees (count one) fails as a matter of law. Dkt. #51 at 14. Because the Court will deny summary judgment on the breach of contract claim, summary judgment is not appropriate on the constructive trust and accounting claim.

### F. **Punitive Damages.**

Towner does not oppose Plaintiffs' motion with respect to his request for an award

of punitive damages. Dkt. ##51 at 16-17, 57 at 3. The Court will therefore grant summary judgment in favor of Plaintiffs on the claim for punitive damages (*see* Dkt. #15 at 19).

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #47) is **granted in part** and **denied in part**. The motion is granted with respect to (a) Plaintiffs' negligent misrepresentation claim (count two) to the extent that claim is based on Defendant's alleged statements that he would return money to FAPP and would always be there for the company, (b) Plaintiffs' claims for fraudulent inducement (count one) and negligent misrepresentation (count two) to the extent those claims are based on Defendant's alleged statement that FAPP was financially strong, (c) Plaintiffs' breach of fiduciary duty claim (count three) to the extent Plaintiffs rely on a theory of overvaluation, and (d) Plaintiffs' claim for fraud in the execution (count six). The motion is denied in all other respects.

2. Plaintiffs' motion for partial summary judgment (Dkt. #51) is **granted in part** and **denied in part**. The motion is granted only with respect to Towner's request for punitive damages.

3. The Court will set a final pretrial conference by separate order.

DATED this 2nd day of October, 2009.

_____
David G. Campbell
United States District Judge